## MAKI V. STATE.

### (No. 632.)

CRIMINAL LAW—CRIMINATING STATEMENTS OF ACCUSED—ADMISSI-
BILITY—EVIDENCE—HOMICIDE—TESTIMONY OF ACCUSED AT COR-
ONER'S INQUEST—ADMISSIBILITY.

1. Self-criminating statements of one accused of crime are
   not *per se* admissible over objection, when it is disclosed
   that the accused was in custody at the time for the crime
   charged, unless they are shown to have been voluntarily
   made; there is no presumption that such statements are
   voluntarily made, but the burden is upon the prosecution,
   seeking to prove such statements, to show their voluntary
   character.

2. If one accused of a homicide has been advised of his rights
   and duly cautioned before testifying at the coroner's in-
   quest, and thereupon he testifies voluntarily, his criminating
   statements then made are admissible against him upon
   his subsequent trial.

3. Criminating statements in his testimony under oath be-
   fore the coroner's inquest made by one who was then un-
   der arrest and charged with the commission of the homi-
   cide under investigation, are not admissible against him
   upon his subsequent trial for the homicide, unless it ap-
   pears that he was informed of his right to decline to be a
   witness, or to answer any question, and was properly cau-
   tioned.

4. One who was under arrest and charged with the commission
   of a homicide was brought before a coroner's inquest, with-
   out counsel, and upon being asked by the coroner if he
   wanted to testify was understood to answer that he did,
   whereupon he was sworn and gave evidence which was in-
   troduced upon his subsequent trial, over the objection that
   the statements were not shown to have been voluntarily
   made. *Held,* that as the accused had not been advised of
   his rights and duly cautioned before testifying at the in-
   quest, the admission of his statements then made was
   prejudicial error.

[Decided January 3, 1911.]                (112 Pac. 334.)

ERROR to the District Court, Uinta County, HON. DAVID
H. CRAIG, Judge.

The material facts are stated in the opinion.

*H. E. Christmas* and *H. R. Christmas,* for plaintiff in error.

Testimony given, either under oath or otherwise, at the coroner's inquest by persons under arrest or suspected of crime is not admissible upon their subsequent trial for the crime then under investigation. Such testimony cannot be regarded as voluntary. (Tuttle v. People, 33 Colo. 243, 79 Pac. 1035, 70 L. R. A. 33; Twiggs v. State, (Tex. Cr. App.) 75 S. W. 531; State v. Spier, 86 N. C. 600; State v. Hdw. Co., 109 Mo. 118.) The early English cases denied the admissibility of such evidence although the party was not then charged with the crime. (Rex v. Lewis, Carr. & P. 161; Reg v. Owen, 9 id. 238.) Where the party has testified without any knowledge as to his rights and without the aid of counsel the testimony is not admissible. (State v. O'Brien, 18 Mont. 1.) In the following cases under varying circumstances, such testimony was held to be inadmissible: People v. McMahon, 15 N. Y. 384; Wood v. State, 22 Tex. App. 431, 3 S. E. 336; Hendrickson v. People, 10 N. Y. 13; State v. Garvey, 25 La. Ann. 191; Clough v. State, 7 Neb. 320; Scheffler v. State, 3 Wis. 823; State v. Andrews, (Ore.) 58 Pac. 765; People v. Gibbons, 43 Cal. 557; State v. Welch, 36 W. Va. 690; U. S. v. Bascadore, 2 Cranch C. C. 30.) The cases cited hold that the confession is incompetent when given under oath, and that rule is applicable to a person tried upon a charge of homicide who testified as a witness at the coroner's inquest. The mere fact that at the time of the inquest he was suspected of the homicide will not exclude his incriminating statements voluntarily made. They may be subsequently used against him as a confession, and go to the jury for what they are worth, though he was not cautioned that they might be used against him. If, however, he is under arrest, or if he has been indicted or formally charged with the crime, he stands in the position of a prisoner on trial. He is entitled to the same privileges and warning so far as his statements are concerned as a prisoner at a preliminary

examination. He cannot be directly or indirectly compelled to testify against himself. (State v. Seen, 32 S. Car. 394; State v. Carroll, 85 Ia. 1, 51 N. W. 1159; Hendrickson v. People, 10 N. Y. 13; Teachout v. People, 41 N. Y. 7; People v. Mondon, 103 N. Y. 211; Clough v. State, 7 Neb. 320; State v. O'Brien, 18 Mont. 1, 43 Pac. 1091; People v. McMahon, 15 N. Y. 384; State v. Young, Winst. (N. C.) 126; Underhill on Ev., pp. 165, 166.)

The evidence in this case was circumstantial, and on behalf of plaintiff in error it is contended that the circumstances shown by the evidence are not sufficient to warrant the verdict of guilty. All the facts and circumstances as proven must not only be consistent with the guilt of the accused, but they must at the same time be inconsistent with the hypothesis that he is innocent and with every other hypothesis except that of guilt. (State v. Johnson, 19 Ia. 230; Findley v. State, 5 Blackf. (Ind.) 576; State v. Asbell, 57 Kan. 398; People v. Ward, 105 Cal. 335, 38 Pac. 945; State v. Hunter, 50 Kan. 302; U. S. v. Reder, 69 Fed. 965; Wentland v. State, 145 Ind. 38, 43 N. E. 931.

*W. E. Mullen,* Attorney General, for the State.

The testimony given by the plaintiff in error at the coroner's inquest and repeated by the coroner as a witness at the trial of this case does not appear to have been in any way prejudicial. It tended to prove, if anything, only that plaintiff in error was endeavoring to prevent his co-defendant from striking the deceased with a knife, and the willingness of this plaintiff in error to make a statement before the coroner favorable to himself is therefore quite apparent. It was not a confession of guilt nor a declaration against himself. If no other proof of his guilt had been submitted the jury would have been authorized to acquit him upon the charge. His statement did not come within the rule against self-incrimination, for the reason that it did not furnish a necessary link of evidence relating to the whereabouts or movements of the defendant at the time of the homicide, and necessary to secure a conviction. The state-

ment itself was not incriminating, and the whereabouts and movements of defendant at or about the time of the homicide was shown by the testimony of other witnesses. Hence, if the admission of the coroner's testimony on this point was erroneous as a matter of law, which we do not concede, it was not prejudicial and did not affect the substantial rights of the accused. It is therefore insufficient as a ground for reversal. (Edelhoff v. State, 5 Wyo. 19; Leslie v. State, 10 Wyo. 10; Long v. State, 15 Wyo. 262.) It is necessary to carefully examine the facts in each case before applying the principles relating to the admission of the statements of an accused. (Clay v. State, 15 Wyo. 58.) The general subject of confessions and incriminating statements is reviewed in Horn v. State, 12 Wyo. 80. Other cases ·presenting various facts and circumstances under which the admissibility of statements made before coroners or at preliminary hearings are upheld are: People v. Thayers, 1 Park. Cr. Rep. 595; Williams v. Comm., 29 Pa. St. 102; Mack v. State, 48 Wis. 271; State v. Miller, 35 Kan. 328; Griggs v. State, 59 Ga. 738; State v. Mullins, 101 Mo. 514; People v. Mondon, 38 Hun (N. Y.) 188. The facts and circumstances as shown by the evidence were sufficient, in our opinion, to sustain the verdict, independent of any statement made by the plaintiff in error.

SCOTT, JUSTICE.

An information was filed in the District Court of Uinta County on November 4, 1908, charging Charles Maki with the crime of murder in the first degree. He was duly arraigned, pleaded not guilty and was subsequently tried and found guilty of manslaughter. He filed a motion for a new trial which was overruled, judgment was pronounced against him upon the verdict, and he brings error.

1. The plaintiff in error was sworn and testified as a witness at the coroner's inquest. The coroner testified as a witness at the trial on behalf of the State and inquiry was made as to statements made by the plaintiff in error in his evidence given at the inquest. The defendant was per-

mitted to interrogate the witness as to the conditions under which he so testified.  Upon the answers to such interrogatories the defendant objected to the witness testifying to what he said under oath at the coroner's inquest for the reason that his statements were not voluntarily made, but were made at a time when he was under arrest for the crime charged in the information and had not been apprised by the coroner that he was under no obligation to testify, and that if he did testify at such inquest his statements might be used against him upon his trial.  The objection was overruled and an exception reserved.

The evidence of the coroner shows that the plaintiff in error was under arrest at the time he gave his evidence before the coroner for killing the deceased, whose dead body and the nature of the death was then the subject of the coroner's inquest.  He was not informed that what he said might be used against him upon his trial, nor was he advised of his rights in the matter nor does it appear that he had the benefit of counsel.  Under such circumstances it is contended by the defendant that evidence of what he then and there testified to under the surrounding conditions was inadmissible as evidence against him upon the trial.  This evidence was material.  It tended to show that he was present with the deceased at the time and place when the latter received his death blow.  The evidence was largely circumstantial and the defendant did not testify as a witness upon the trial.

The right of the State to use this evidence turns upon the question as to whether it was voluntarily given by the plaintiff in error at the coroner's inquest.  If it is not stamped with that essential requirement then it was inadmissible and prejudicial for it was one of the constitutional rights of the defendant that he should not be compelled to testify against himself.  (Sec. 11, Art. I of the Constitution.)  It is the general rule that self-criminating statements are not *per se* admissible over objection when the evidence discloses that the defendant was in custody for the

crime charged at the time of making such statements un-
less shown to have been voluntarily made. Under this rule
there is no presumption that such statements are volun-
tarily made but on the contrary the presumption is the
other way, and upon the trial of an accused the burden is
upon the State seeking to prove such statements to show
their voluntary character. It is impossible to show this
where the accused is under arrest for the crime under in-
vestigation by the coroner's jury, and upon such investiga-
tion the criminating statements were made under oath
without also showing that he had the benefit of counsel or
was fully informed of his rights. He was not here told
that he need not make a statement or might make a state-
ment or be sworn as a witness and that if he made a state-
ment whether under oath or not it might be used against
him if subsequently tried upon the charge for which he
was then under arrest and that he could do as he pleased
about the matter. It is true that the coroner testified that
the accused voluntarily gave his evidence but he also said
in answer to an inquiry propounded by the Court as to what
he said to the accused before the latter testified and as to
what the accused said, "I just merely asked him if he
wanted to testify and my recollection is he stated he did.
I believe that was all that was said." Upon the inquiry of
the coroner, the accused, being then under arrest for the
crime being investigated, was brought before the coroner's
jury and without being informed of his rights or warned
that his evidence might thereafter be used against him was
sworn as a witness and gave the evidence which was intro-
duced upon the trial over the objection that it was not
shown to be of that voluntary nature to entitle it to ad-
mission.

The word voluntary as applied to evidence given by one
at a coroner's inquest who is not under arrest but who knew
he was under suspicion of having perpetrated the homicide
under investigation, and who was subpoenaed as a witness
and afterward charged and tried for such homicide is

learnedly discussed in Tuttle v. People, 33 Colo. 243, 70 L. R. A. 33. In that case the court adopts the definition of what constitutes a voluntary statement used in this sense as given in State v. Clifford, 86 Iowa 850, 41 Am. St. Rep. 518, 53 N. W. 299, as follows: "A statement, to have been voluntarily made must proceed from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause." The court proceeds to discuss the way of determining whether such extraneous disturbing cause exists in a given case which would exclude such statement from the inhibition of the Constitution and lays down the rule that the surrounding circumstances must govern in each particular case. It was there held that the refusal of the witness to testify or had he claimed his constitutional right not to testify would probably, owing to the surrounding conditions, have subjected the defendant to immediate arrest upon the charge of murdering the deceased and that evidence given under such conditions must be held to have been not voluntary but under the influence of a disturbing cause. In 1 Greenleaf on Evidence, 225, it is said with reference to this subject: "The manner of the examination is therefore particularly regarded; and if it appears that the prisoner had not been left wholly free, and did not consider himself to be so in what he was called upon to say, or did not feel himself at liberty to wholly decline any explanation or declaration whatever, the examination is not held to have been voluntary." In the case before us there was no expression of a desire or willingness on the part of the prisoner to testify until it was drawn from him by a question from the coroner. The suggestion was not therefore spontaneous and springing out of the prisoner's mind but came from and through the inquiry of the coroner, and under conditions that a refusal to testify would constitute a powerful incentive in the minds of the officers of the law to continue his incarceration.

The defendant in a criminal case under our statute is a competent witness in his own behalf. It is optional with

him whether he will avail himself of the right. Under the common law he could not testify as a witness, though his confessions or criminating statements if voluntarily made could be used as evidence against him. The rule surrounding such confessions or admissions that developed under the common law have been extended and applied in cases where the common law disability has been removed by statute to confessions or criminating statements made under oath by the accused who is then under arrest, though the courts differ as to whether a criminating statement so made at a coroner's inquest irrespective of its voluntary character is admissible at all. The great weight of authority and the trend of the later decisions is to the effect that if he has been advised of his rights and duly cautioned and he then testifies voluntarily his evidence is admissible against him. (People v. McMakon, 15 N. Y. 384; People v. Minden, 103 N. Y. 211, 57 Am. Rep. 709, 8 N. E. 496; People v. Chapleau, 121 N. Y. 266, 24 N. E. 469; People v. Wright, 136 N. Y. 625, 32 N. E. 629; Lyon v. People, 137 Ill. 602, 27 N. E. 677; Wood v. State, 22 Tex. App. 431, 3 S. W. 366; State v. Garvey, 25 La. Ann. 191; Steele v. State, 76 Miss. 387, 24 So. 910.) The object and purpose of warning the accused under such circumstances is two-fold: First, that it may be brought home to his mind that what he says under oath may be usesd against him and being so informed that he may be free to act as he pleases; and second, that a legal proceeding may not be converted into an inquisition. It is true that every one is presumed to know the law and to assume the consequences of his own acts and upon this theory it was held by the Supreme Court of Missouri that the evidence of one not under arrest who admitted the killing and voluntarily appears and testifies before a coroner's jury may be used against him in the absence of a showing that the coroner informed him of his rights. (State v. Mullins, 101 Mo. 514, 14 S. W. 625.) This and other Missouri cases (State v. Young, 119 Mo. 495, 24 S. W. 1038; State v. David, 131 Mo. 380, 33 S. W.

38) are distinguishable upon the facts from the case before us for in each of those cases the defendant was not under arrest at the time he gave his testimony at the coroner's inquest. In State v. Young, *supra,* notwithstanding that·he was not under arrest, the defendant being an ignorant German boy, who at the time of the inquest was under suspicion of having committed the homicide and without the aid or advice of counsel, and not having been informed of his rights by the coroner gave his evidence. It was held that such evidence could not be subsequently used against him on his trial for the homicide. In Schoeffler v. State, 3·Wis. 717, the statement under oath of the defendant in the form of a deposition was taken before the coroner at the inquest and reduced to writing at a time when the defendant was not under arrest but under suspicion in the neighborhood of having committed the homicide for which he was subsequently tried and convicted. He was neither. cautioned nor informed of his right to decline to answer any question. His evidence was held admissible because the defendant was not at the time charged with the commission of the crime. In Clough v. State, 7 Neb. 320, 339, the record did not show that the defendant was under oath at the time he made the statements before the coroner's jury and they were held to have been properly admitted. In State v. Young, 60 N. C. (1 Winst. Law.) 126, the prisoner was arrested as a witness, brought before the coroner's jury and subjected to a rigid examination. The evidence was held to be not voluntarily given and· for that reason inadmissible against the prisoner upon a trial for the homicide. The last three cases are distinguishable upon the facts from the case here presented where the defendant was in the custody and charged with the crime at the time he gave his evidence before the coroner's jury. While the decisions are not in harmony as to the rights of one who is not under arrest for the crime under investigation at the time he gave his evidence before a coroner's jury as a witness, they are practically unanimous as to one who is under

arrest and charged with the commission of the homicide at the time he is sworn and gives evidence before such jury. The person so under arrest and charged with the commission of the homicide and who is without counsel is entitled to be informed of his right to decline to be a witness, or to answer any question and properly cautioned as essential elements in determining the voluntary character of his statements then and there made. He is physically restrained of his liberty. In that sense he is not free to do and act as he pleases and there is a very natural presumption that this restraint extends to and affects his mind to the extent that he would not freely say or admit those things which might thereafter be used as evidence against him. This presumption is not, however, conclusive but may be overcome if it be made to appear from the evidence that after being cautioned and informed as to his rights the prisoner voluntarily submits himself to examination under oath. Until he is so informed and cautioned the law does not recognize his mind to be sufficiently free from the impending peril of his situation so as to entitle his statements to admission as evidence against him. Not alone upon the question that they may be untrue but that the mind must also be left free to act with knowledge of the possible consequences.

We are of the opinion that the Court committed prejudicial error in admitting over the objection of the plaintiff in error the evidence of his statements made under oath before the coroner's jury at a time when he was under arrest and charged with the commission of the homicide and in the absence of any caution or information as to his rights.

2. It is assigned as error that the evidence is insufficient to support the verdict. It is unnecessary to review the evidence upon this assignment and it would be improper for us to do so as the judgment will have to be reversed and a new trial awarded for the error previously discussed.

*Reversed.*

BEARD, C. J., and POTTER, J., concur.